IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MARITZA ORENGO and EDWIN ORENGO,<br><br>  Plaintiffs<br><br>v.<br><br>SPEEDWAY LLC; SPEEDWAY #6772;<br>HESS RETAIL STORES LLC; and<br>HESS RETAIL OPERATIONS LLC<br><br>  Defendants. | CIVIL ACTION NO.<br>18-0657 |

FILED
OCT 31 2019
KATE BARKMAN, Clerk
By _____ Dep. Clerk

## MEMORANDUM

Presently before the Court are Defendant Speedway LLC's Motion for Summary Judgment (ECF No. 29) filed October 11, 2019 and Plaintiffs' Response in Opposition to the Motion for Summary Judgment (ECF No. 43) filed October 21, 2019. For the reasons set forth below, the Motion for Summary Judgment is **DENIED**.

I. **FACTUAL AND PROCEDURAL HISTORY**

This action arises from Plaintiff Maritza Orengo's[1] slip and fall accident which occurred at Defendant's[2] gas station. On the morning of January 31, 2016, at approximately 9:32 a.m., Plaintiff arrived at Defendant's gas station to purchase fuel and a newspaper. Several minutes later, after she completed pumping gas, Plaintiff began to walk towards the store entrance to obtain her receipt and buy a newspaper. Within her first few steps, Plaintiff slipped and fell on a patch of ice located between the fuel pump and a pillar which held up the canopy covering the pump area. Plaintiff laid on the ground until she was assisted into her car by

---

[1] Though there are two Plaintiff's in the instant action, Maritza Orengo and her husband Edwin Orengo, the Court shall hereafter refer to Maritza Orengo as "Plaintiff" given that the action arises from her accident.

[2] As parties have indicated that Defendant Speedway LLC should be the sole defendant in this case, and they intend to enter a formal stipulation to amend the caption to reflect this, the Court shall hereafter refer to Speedway LLC as "Defendant."

1

Speedway employee Heather Rotiske and an unknown customer. Plaintiff declined medical treatment at the scene and drove home, however, upon arriving home, sought immediate medical treatment. As a result of this fall, Plaintiff sustained a fracture to her left femur. On August 18, 2016, Plaintiff was also diagnosed with a herniation at the L4-L5 vertebrae of her lower back and has undergone a series of epidural injections. Plaintiff alleges that she still experiences pain and discomfort in her lower back.

On January 3, 2018, Plaintiffs Maritza Orengo and Edwin Orengo filed the underlying lawsuit, asserting claims of negligence and loss of consortium, against Speedway LLC, Speedway #6772, Hess Retail Stores LLC, and Hess Retail Operations LLC in the Court of Common Pleas of Philadelphia County, Pennsylvania. (See ECF. No. 1) Defendant Speedway LLC removed the case to the United Stated District Court for the Eastern District of Pennsylvania on February 14, 2018, and filed its Answer to Plaintiffs' Complaint on June 18, 2018. (ECF. Nos. 1, 5.)

Defendant does not dispute that Plaintiff was at its store on January 31, 2016, nor does it dispute that she slipped and fell in its fuel pump area. (Def.'s Mot. Summ. J. ¶ 1.) Instead, Defendant argues that summary judgment is appropriate because it had no actual or constructive notice. Based on the record before the Court, there exists a genuine dispute of material fact as to whether Defendant had notice of the hazardous condition that caused Plaintiff's fall.

## II. LEGAL STANDARD

Summary judgment is appropriate where the record and evidence, taken in the light most favorable to the non-moving party, show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The essential inquiry is "whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-252 (1986). The moving party has the initial burden of informing the court of the basis for the motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). An issue is genuine only if there is a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party. Anderson, 477 U.S. at

2

249. A factual dispute is material only if it might affect the outcome of the suit under governing law. Id. at 248.

To defeat summary judgment, the non-moving party cannot rest on the pleadings, but rather, that party must cite "to particular parts of materials in the record" showing that there is a genuine dispute for trial. Fed. R. Civ. P. 56(c). Similarly, the non-moving party cannot rely on unsupported assertions, conclusory allegations, or mere suspicions in attempting to survive a summary judgment motion. Williams v. Borough of West Chester, 891 F.2d 458, 460 (3d Cir. 1989) (citing Celotex, 477 U.S. at 325). The non-moving party has the burden of producing evidence to establish prima facie each element of its claim. Celotex, 477 U.S. at 322-323. If the court, in viewing all reasonable inferences in favor of the non-moving party, determines that there is no genuine dispute as to any material fact, then summary judgment is proper. Id. at 322; Wisniewski v. Johns-Manville Corp., 812 F.2d 81, 83 (3d Cir. 1987). When the non-moving party will bear the burden of proof at trial, the moving party's burden can be "discharged by 'showing' - that is, pointing out to the District Court - that there is an absence of evidence to support the non-moving party's case." Jones v. Indiana Area Sch. Dist., 397 F. Supp.2d 628, 642 (W.D. Pa. 2005) (quoting Celotex, 477 U.S. at 325).

### III. **DISCUSSION**

Defendant moves for summary judgment on the ground that Plaintiffs "have no evidence to sustain their burden of proof that [Defendant] had actual or constructive notice of the black ice condition that allegedly caused Plaintiff to slip and fall." (Def.'s Mot. Summ. J. ¶ 1.) Defendant contends that Plaintiff does not know how long the black ice was present prior to her fall, did not see the patch of ice prior to the fall, and does not know what caused the black ice to form. Id. Thus, Defendant maintains, in the absence of any evidence that Defendant had actual or constructive notice of the alleged patch of ice, Defendant owed no duty of care to Plaintiff. Id.

Plaintiffs claim that the "factual record demonstrates that Defendant's employees knew or should have known of the existence of the ice that would cause Plaintiff's fall." (Pls.' Mem. of Law in Opp'n to Def.'s Mot. Summ. J. at 3) Specifically, Plaintiffs aver that evidence that Defendant's employees had notice of the ice can be established by: (a) the weather conditions on the morning of the accident; (b) the fact that Defendant's employees should have conducted at least two inspections of the accident area the morning of the accident; and (c)

Defendant's employee's post-accident actions. Id. at 3-4.

### a. Premises Liability

It is undisputed that Plaintiff, throughout her time at Defendant's gas station on January 31, 2016, maintained the status of "business invitee." (Mem. of Law in Supp. of Def.'s Mot. Summ. J. at 5; Pls.' Mem. of Law in Opp'n to Def.'s Mot. Summ. J. at 2-3.) "The duty owed to a business invitee is the highest duty owed to any entrant upon land." Falcone v. Speedway LLC, No. CV 14-2188, 2017 WL 220326, at *2 (E.D. Pa. Jan. 19, 2017) (citing Truax v. Roulhac, 126 A.3d 991, 997 (Pa. Super. Ct. 2015)). Under this affirmative duty of care, a landowner must protect business invitees from both known dangers and those that might be discoverable with reasonable care. Rippee v. Grand Valley Mfg. Co., 762 F.2d 25, 27 (3d Cir. 1985).

Pennsylvania courts have adopted Section 343 of the Restatement (Second) of Torts which holds a landowner liable for a business invitee's injuries if the landowner:

> (a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and
> (b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and
> (c) fails to exercise reasonable care to protect them against the danger.

Carrender v. Fitterer, 469 A.2d 120, 123 (Pa. 1983) (quoting Restatement (Second) of Torts § 343 (1965)).[3] Thus, in order to prevail in this case, Plaintiff must establish that the Defendant "had a hand in creating the harmful condition or that [Defendant] had actual or constructive notice of such condition." Moultrey v. Great A & P Tea Co., 422 A.2d 593, 535 (Pa. Super. Ct. 1980).

### b. Actual Notice

Based on a review of the evidence, this Court finds that there is a question of material fact as to whether Defendant had actual notice. "A jury may infer a landowner had actual notice of a condition where "the condition is one which the owner knows has frequently recurred."" Falcone, 2017 WL 220326, at *2 (E.D. Pa. Jan. 19, 2017) (citing Porro v. Century III

---

[3] As this is a diversity action, the law of the forum state (Pennsylvania) applies as it governs the cause of action. See Erie R.R. Co. v. Tompkins, 304 US. 64 (1938); Hunt v. U.S. Tobacco Co., 538 F.3d 217, 220 (3d Cir. 2008).

4

Assocs., 846 A.2d 1282, 1286 (Pa. Super. Ct. 2004)). In Falcone, the plaintiff was also injured at a Speedway gas station when he slipped and fell on a puddle of diesel fuel. Falcone, 2017 WL 220326, at *1. Speedway filed a motion for summary judgement, arguing, as it does in this case, that it had no actual or constructive notice. Id. The Court denied the motion, finding that the issue of Speedway's actual notice was disputed as: (1) one of Speedway's employees testified that there were recurring gasoline spills, (2) the spills would occur a few times a month, and (3) Speedway's employees were required to fill out a safety checklist that explicitly stated that there should be "no gasoline or oil spills" in the parking lot. Id. at 3.

Similar to Falcone, Defendant's corporate designee, Mr. Raymond Huff, testified that employees were required to fill out a safety checklist to ensure that they were doing, inter alia, a "four-corner" walk of the lot to check for any hazards such as patches of ice. (Huff Dep. 40:6-18; 41:1-43:1; 49:1-19.) Further, when an employee is changing trash bags on the lot, he or she is expected to observe any potential hazards in the area, including ice, and remedy it. (Id. 93:10-17.) Defendant's employee, Heather Rotkiske, confirmed that these ice policies and procedures are followed at the subject Speedway gas station, stating that employees normally salt throughout the day if there is any ice. (Def.'s Mot. Summ. J., Ex. 8.)

Viewing the facts in the light most favorable to the non-moving party, Plaintiff, a jury may reasonably infer that Defendant had actual notice of the reoccurring condition of ice on the pump pad as Defendant had developed specific policies for how to address ice and these policies were implemented, throughout the day, at the gas station where Plaintiff fell.

### c. Constructive Notice

Assuming Defendant was able to establish that it had no actual notice of the hazardous condition, there still exists a genuine dispute of material fact regarding whether it had constructive notice. To establish constructive notice, Plaintiff must provide evidence that demonstrates "the condition existed for such a length of time that in the exercise of reasonable care the owner should have known of it." McDowell v. Moran Foods, LLC, 680 F. App'x 72, 75 (3d Cir. 2017) (citing Moultrey, 422 A.2d at 596.) With respect to naturally occurring conditions, such as ice, Plaintiff must provide proof that "the ice was observable for any significant period of time prior to the accident." Tameru v. W–Franklin, L.P., 350 F.Appx. 737, 740 (3d Cir.2009). As held by the Third Circuit in Tameru, constructive notice of a dangerous weather-related condition may be imputed on a defendant when the defendant knows (1) of weather conditions at

the time of the incident and (2) that the weather condition creates a specific hazard on the premises. Tameru, 350 F.Appx. at 740.

Turning to the Defendant's knowledge of the weather, Plaintiff has noted that, while it was not snowing the day of the accident, it had snowed approximately seven days before. (Orengo Dep. 72:14-17.) She further testified that she recalls hearing on the news that it was sunny, and did not hear anything about there being ice on the ground, but was dressed in "long pants and a sweater" when she left her home that morning. (Id. 69:17-70:9.) Plaintiff has provided local climatological data from the NOAA that shows, similar to her testimony, that there was no snow or precipitation for nearly eight days prior to the accident, nor any snow or precipitation the day of the accident. (Pls.' Mem. of Law in Opp'n to Def.'s Mot. Summ. J. at 15.) However, the same data demonstrates that it was below freezing for at least nine consecutive hours prior to Plaintiff's fall (Id. at 4.)

Plaintiff also points to surveillance video of the gas station the day of the accident in which there are "visible piles of snow" and "numerous discolored patches which resemble wetness or ice." (Id. at 4.). Heather Rotkiske, one of the two employees present the day of the accident, further indicated in a handwritten statement dated April 25, 2016 that "[the accident] was in winter. No snow but wet. We normal [sic] salt throught [sic] the day if theres [sic] any ice." (Def.'s Mot. Summ. J., Ex. 8.) The evidence, viewed in the light most favorable to Plaintiff, satisfies the knowledge requirement of Tameru to create a genuine issue of material fact as to whether Defendant knew of the weather conditions at the time of the accident: (1) the NOAA weather report indicates that it was subfreezing for at least nine hours before the fall, (2) Defendant's surveillance camera shows at least one visible pile of snow the day of the accident and discolored patches on the pump pad which the jury could interpret to be ice, and (3) Defendant's employee Rotiske noted that it was "winter" and "wet" that morning.

With respect to the second prong of the Tameru test for constructive notice, this Court finds that Plaintiffs have provided sufficient evidence that Defendant knew the weather condition created a specific hazard on the premises. Defendant's corporate designee, Raymond Huff, testified that Defendant has policies and procedures that specifically include language about snow and ice prevention and removal. (Huff Dep. 35:11-19.) At the beginning of a new shift, Defendant's employees do a "four-corner walk" in which an employee will walk the four corners of the lot and notate anything that may be "out of the ordinary, anything that needs to be

addressed immediately." (Id. 40:6-18.) If, during the four-corner walk, an employee discovers patches of ice in the pump area, he or she will "go out and address it immediately" or, if the patch is larger, he or she will call dispatch for a subcontractor to salt the area. (Id. 42:12-43:1.) Mr. Huff confirmed that the area where Plaintiff's accident occurred should have been inspected during the four-corner walk that morning. (Id. 49:1-19.)

In addition to the four-corner walk, Mr. Huff explained that, when an employee is changing trash bags on the pump pad, he or she is expected to observe any potential hazards in the area. (Id. 93:10-17.) If the employee observes snow or ice on the ground that could pose a slipping hazard to customers, he or she is expected to remedy it. (Id. at 93:18-94:2.) Mr. Huff specified that, had Ms. Rotkiske observed ice on the ground, she could have come into the store and grabbed either "the bag [of salt] or whatever was needed." Id. Ms. Rotiske's handwritten statement, supra, confirms this policy as she noted that employees normally salt throughout the day if there is any ice. (Def.'s Mot. Summ. J., Ex. 8.)

Defendant relies on Tameru to argue that weather conditions alone can only support an inference of actual or constructive notice of a hazardous condition when coupled with evidence that defendant had knowledge of both weather condition at time of accident and the fact that weather condition created hazards on premises. In Tameru, the hotel had no knowledge of ice ever forming at the location of the incident. See 350 F.Appx. at 740 ("The security manager testified that he had never before observed ice in the covered entryway area.")[4] In this case, Defendant has policies and procedures specifically designed to check for hazards, including ice, in the area where Plaintiff fell. Thus, this Court finds that there exists sufficient evidence to support the second prong of Tameru's test, that Defendant knew the weather conditions created a specific hazard, to submit the issue of constructive notice to a jury.

Defendant also cites Beck v. Holly Tree Homeowners Ass'n, 689 F. Supp. 2d 756 (E.D. Pa. 2010) in support of its claim that Defendant had no constructive notice of the ice that caused Plaintiff to fall. In Beck, the Court granted the defendant's motion for summary judgment on a slip and fall case at a townhouse complex. Id. at 758. First, this Court notes that

---

[4] This Court also notes a factual difference between Tameru and this case. In Tameru, the security manager further testified that, seventy-five minutes before the accident, he "spot-checked" the entryway area and did not detect any ice. See Tameru, 350 F.Appx. at 740. In this case, it is unclear whether either of the employees actually inspected the area where Plaintiff fell prior to her accident. Thus, the jury could infer that the ice had been present during the entire nine consecutive hours of below freezing temperature prior to Plaintiff's fall.

7

Beck was analyzed under the hills and ridges doctrine, and because the plaintiff failed to meet the first element, the doctrine precluded recovery. Beck, 689 F. Supp. 2d at 766. Second, although the Court in Beck also determined Defendants had no constructive notice, the case is factually dissimilar to the one before us now. Id. In Beck, on the day of the plaintiff's fall, the conditions were not conducive to the formation of black ice until ninety minutes before the accident. Beck, 689 F. Supp. 2d at 768. The court held that, "without any evidence that the black ice was observable for any significant period of time prior to the accident, a jury cannot reasonably infer that Defendants had constructive notice of the hazardous condition." Id. In the instant case, weather conditions were subfreezing and conducive to the formation of black ice for at least nine hours before the accident. During those nine hours, it was Defendant's policy to inspect the area at least once for hazardous conditions. Mr. Huff further testified that, when manager heather Rotkiske went out to empty the trash cans next to the area where Plaintiff fell, she was supposed to observe any potential hazards in the area. (Huff Dep. 93:10-17.) Thus, because Defendant had at least two opportunities the morning of the accident to inspect the area where Plaintiff fell, and weather conditions were conducive to the formation of ice for a significant period of time prior to the accident, a reasonable jury may infer that Defendant had constructive notice of the hazard.

## IV. CONCLUSION

Based on the foregoing reasons, this Court finds that Plaintiffs have come forth with evidence sufficient to raise a genuine dispute of material fact as to whether Defendant had actual or constructive notice of the hazardous condition that cause Plaintiff's accident. Accordingly, Defendant's Motion for Summary Judgment is **DENIED**.

8